[No. A066654. First Dist., Div. Four. Dec. 8, 1994.]

DONALD JACKSON, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
HOME SAVINGS OF AMERICA et al., Real Parties in Interest.

COUNSEL

Herman A. D. Franck V for Petitioner.

No appearance for Respondent.

Morgan, Miller & Blair, Marilyn Morris and Richard C. Vasquez for Real Parties in Interest.

OPINION

POCHÉ, J.—Petitioner Donald Jackson seeks a writ to require respondent court to overrule a demurrer to a cause of action under the Unruh Civil Rights Act (Civ. Code, § 51).[1]

PROCEDURAL HISTORY - FACTS

On April 4, 1994, petitioner filed a complaint against Home Savings of America and Maria G. Delucchi-Kahale, an employee of Home Savings. The complaint alleges in relevant part as follows: Petitioner is in the business of giving investment advice. Two elderly sisters named Vivian Kerr and Marion Jackson were his clients. He advised them to place funds from matured certificates of deposit into a mutual fund, the Seligman High-Yield Bond Fund. On April 27, 1993, petitioner accompanied the two women to Home Savings to accomplish this through a cashier's check made out to the Seligman Fund. Because of the size of the transaction, the teller brought the request to the attention of the branch manager, Ms. Marie Delucchi-Kahale. Ms. Delucchi-Kahale was suspicious of petitioner (an African American) because of her prejudice against African Americans. She incorrectly informed Ms. Kerr that she would suffer an interest penalty in the transaction. Ms. Delucchi-Kahale told the women that she had reason to believe that petitioner was trying to pull a "scam" on the women and urged them not to undertake the transaction. She called the Hayward Police Department and reported a forgery in progress. Uniformed police came to the scene. One of them recognized petitioner and stated that there was nothing wrong or suspicious about him. Ms. Delucchi-Kahale further called the investment department of Home Savings and learned that the Seligman Fund was one offered through the bank. Nevertheless, Ms. Delucchi-Kahale persisted in her statements attacking petitioner to his clients. Eventually, she prevailed and the clients went home.

The complaint set forth causes of action for violation of the Unruh Civil Rights Act, slander, interference with business relations, unfair business

---

[1]Unless otherwise indicated all further statutory references are to the Civil Code.

practices and malicious prosecution. Real parties demurred to the complaint as to several causes of action. On July 25, 1994, the court filed an order on the demurrer. As to the first cause of action for violation of the Unruh Civil Rights Act, the order reads: "Defendants['] demurrer to the First Cause of Action for failure to state facts sufficient to constitute a cause of action . . . is sustained, with leave to amend to state facts constituting [a] cause of action at common law."[2]

DISCUSSION

■ Real parties first contend that the petition should be denied because the demurrer to the first cause of action was sustained with leave to amend. However, the leave to amend was leave to state a cause of action other than for violation of the Unruh Civil Rights Act. The fact that petitioner has now filed a first amended complaint and alleged racial discrimination in a first cause of action does not constitute a waiver of his contention that he has a viable cause of action for violation of the Unruh Civil Rights Act.

The Unruh Civil Rights Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or disability *are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.* . . ." (§ 51, italics added)
■ "The Act is to be given a liberal construction with a view to effectuating its purposes." (*Koire* v. *Metro Car Wash* (1985) 40 Cal.3d 24, 28 [219 Cal.Rptr. 133, 707 P.2d 195]; see also *Rotary Club of Duarte* v. *Board of Directors* (1986) 178 Cal.App.3d 1035, 1046-1047 [224 Cal.Rptr. 213].)

■ Real parties argue, and the court agreed, that petitioner could not bring himself under the protection of the Unruh Civil Rights Act because he was not himself seeking the services of the bank as a customer of the bank at the time the acts alleged in the complaint occurred. Real parties cite the case of *Moran* v. *Peralta Community College Dist.* (N.D.Cal. 1993) 825 F.Supp. 891 as supporting their position that petitioner had to be a customer of the bank in order to complain that racial discrimination by the bank against him violated the Unruh Civil Rights Act.

In *Moran* the widower of a community college district employee brought an action against the district arising from the district's failure to continue his

---

[2]The order also overrules the demurrer to the third cause of action for interference with business relations, sustains the demurrer to the fourth cause of action for unfair business practices with leave to amend to limit the cause of action to one for declaratory relief and sustains the demurrer to the fifth cause of action for malicious prosecution.

spouse's coverage under the district's group health insurance plan following the employee's death. In one of several causes of action, the widower alleged violation of the Unruh Civil Rights Act, claiming that denial of insurance coverage was motivated by racial animus. The court granted a motion for judgment on the pleadings in regard to the Unruh Civil Rights Act cause of action, explaining: "Moran was not a customer; his only relationship with the District was as the spouse of an employee, and the obligations to him arose squarely from the employer-employee relationship between his wife and the District. As such, his claim is outside the ambit of the Unruh Act, and fails to state a claim thereunder." (825 F.Supp. at p. 895.)

Even assuming this decision was correct, there are significant differences between the role of a bank in serving the public and the role of an employer in providing health insurance to its employees. The bank accommodates the public in many ways peripheral to its main functions of providing banking services. For example, a bank ordinarily allows persons to accompany its customers and help them pursue their banking business. When it refuses to allow an African American this courtesy because of his or her race, the bank denies that person the "full and equal accommodations, advantages, privileges or services" of the bank.

Real parties point to the more limited language of section 51.5 which leads them to conclude that a person has standing only if discriminated against in the transaction of banking business. Section 51.5 provides: "No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, sex, or disability of the person . . . ." However, it is clear from the cases under section 51 that the Legislature did not intend in enacting section 51.5 to limit the broad language of section 51 to include only selling, buying or trading. Both section 51 and 51.5 have been liberally applied to all types of business activities. (See *Pines* v. *Tomson* (1984) 160 Cal.App.3d 370, 383-386 [206 Cal.Rptr. 866].)[3] Furthermore, section 51.5 forbids a business to "discriminate against" "any person" and does not just forbid a business to "boycott or blacklist, refuse to buy from, sell to, or trade with any person."

■ Finally, real parties appear to raise an argument not raised below, i.e., that the circumstances as alleged do not support the conclusion that real parties acted because of petitioner's race. They cite to numerous cases

---

[3]*Pines* v. *Tomson, supra*, 160 Cal.App.3d 370, is the only case interpreting section 51.5 to date. There the court affirmed the broad scope intended by the Legislature in enacting section 51.5. The court interpreted the term "business establishment" in the context of section 51.5 consistently with the term as used in section 51. (160 Cal.App.3d at p. 383.)

alleging a violation of the Unruh Civil Rights Act which contain allegations that discrimination was a matter of policy and practice. They suggest that the allegation that real parties acted because of petitioner's race is not an allegation of ultimate fact but a legal conclusion.

As Witkin points out, citing *Semole* v. *Sansoucie* (1972) 28 Cal.App.3d 714 [104 Cal.Rptr. 897]: "The test for allegations of fact or conclusions of law is not absolute; the question is whether the pleading as a whole apprises the adversary of the factual basis of the claim. [Citation.] And particularity of facts depends on the extent to which the defendant needs detailed information. [Citation.]" (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 332, p. 383.) The plain language of section 51 does not prohibit only those acts of discrimination which are routinely committed or are a matter of policy. Obviously, a plaintiff will have an easier burden of persuasion if he can provide evidence that the defendant routinely discriminates against the class to which he belongs. Such an allegation is not necessary, however, to plead a violation of section 51. Whether real parties did discriminate in this case is a factual question and it cannot be determined as a question of law from the facts pleaded.

■ We conclude that petitioner was pursuing an accommodation, advantage or privilege of the bank within the meaning of the Unruh Civil Rights Act when he accompanied his clients to the bank to aid them in transacting their business and that he has stated a cause of action under the Unruh Civil Rights Act by alleging that he was discriminated against in the exercise of this accommodation because of his race. It follows that the court erred in sustaining the demurrer to this cause of action.

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order of July 25, 1994, insofar as the order sustains the demurrer to the first cause of action of petitioner's complaint and to issue a new order overruling the demurrer.

Anderson, P. J., and Reardon, J., concurred.