# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CHRISTOPHER LYNN JOHNSON, M.D.,
            *Plaintiff-Appellant,*

            v.

RIVERSIDE HEALTHCARE SYSTEM, LP,
a California limited partnership,
d/b/a Riverside Community
Hospital; RIVERSIDE HEALTHCARE
SYSTEM, LLC, a California limited
liability corporation; COLUMBIA/
HCA WESTERN GROUP, INC., a
Tennessee corporation, doing
business in California; MEDICAL
STAFF OF RIVERSIDE COMMUNITY
HOSPITAL, a California
unincorporated association; ROBERT
DUNCANSON, M.D.; LIBBY MARTIN;
BARBARA MARSHALL; GAY
DICKINSON; PATRICIA LEMMLE; EARL
TATE; MICHAEL RAWLINGS,
            *Defendants-Appellees.*

No. 06-55280

D.C. No.
CV-03-01392-ABC

ORDER AND
OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
October 18, 2007—Pasadena, California

Filed July 28, 2008

Before: Diarmuid F. O'Scannlain and Milan D. Smith, Jr.,
Circuit Judges, and Michael W. Mosman,* District Judge.

*The Honorable Michael W. Mosman, United States District Judge for
the District of Oregon, sitting by designation.

9375

Opinion by Judge O'Scannlain

**COUNSEL**

Dale L. Gronemeier, Gronemeier & Associates, P.C., South Pasadena, California, argued the cause for the plaintiff-appellant, and filed briefs.

James L. Payne, Payne & Fears LLP, Irvine, California, argued the cause for the defendants-appellees, and filed a brief; Laura Fleming, Payne & Fears LLP, Irvine, California, and Tami Smason, Foley & Lardner LLP, Los Angeles, California, were on the brief.

## ORDER

The petition for panel rehearing is GRANTED. The opinion filed on February 13, 2008, and appearing at 516 F.3d 759 (9th Cir. 2008) is withdrawn. The superseding opinion will be filed concurrently with this order.

## OPINION

O'SCANNLAIN, Circuit Judge:

We are called upon to decide whether a physician who asserts that he was discriminated against (based on his race, sexual orientation, and perceived disability) by doctors and nurses at the hospital where he treated patients can establish civil rights claims under federal and state law.

### I

### A

Christopher Lynn Johnson worked as a physician at the Riverside Community Hospital ("Riverside")[1] and as a member of the Medical Staff of Riverside Community Hospital

---

[1] Also named as defendants in this suit are Riverside Healthcare System, LLC ("RHCS"), a limited partnership doing business as Riverside under California law, and Columbia/HCA Western Group, Inc., a Tennessee corporation with an ownership interest in RHCS. Hereinafter, all three entities will be referred to collectively as "Riverside."

("Medical Staff") from October 1999 until February 2002. Johnson's responsibilities included performing plastic surgeries and providing trauma consultations in Riverside's emergency room. Johnson identifies himself as African American and bisexual. Soon after he began his tenure at Riverside, Johnson alleges that several physicians regularly harassed him because of his sexual orientation and their mistaken belief that he suffered from HIV/AIDS. He alleges that several nurses harassed him and refused to participate in surgeries with him for the same reasons. In addition, Johnson points to several incidents of racial discrimination during his time at Riverside. The first was particularly serious. According to Johnson, a colleague, Dr. Vlasak, admonished him by using a racial slur after Johnson performed surgery on one of Vlasak's patients. As the facts are set forth in Johnson's complaint, Vlasak failed to review the patient's CT scan and consequently failed to realize that the patient was suffering from a skull fracture with an underlying brain contusion. Upon discovering the problem, Johnson admitted the patient for surgery and performed the necessary procedure. When Vlasak learned that Johnson had corrected (and therefore exposed) his oversight, Vlasak moved as if to strike Johnson, "charged" into the room where Johnson was standing and "screamed . . . 'You fucking nigger—why did you do that to me?' "

Second, Johnson alleges that the Medical Staff's Residency Selection Committee refused to consider a residency candidate because he was African-American and, after rejecting the application, the Chairman and other members of the committee "stated in the presence of other physicians" that they would not rank the applicant because of his race and sexual orientation. Finally, Johnson states that a certain nurse "consistently" refused to provide him with necessary equipment during surgical procedures and "repeatedly" asked him to remove trash from the Operating Room, acting as if these requests were "funny." He further alleges that these remarks were racially motivated, as they reflected the nurse's view that he was required to act as a "maintenance man" simply

because he was African-American. Johnson alleges that Riverside and the Medical Staff, of which defendant Dr. Robert Duncanson was the chief, were aware of all of these incidents and made no effort to address them.

Johnson worked at Riverside under the terms of a professional services agreement. The contract explicitly designated Johnson as a "Contractor," rather than an employee. The contract also required Johnson to retain his membership and privileges with the Medical Staff. Failure to do so was a cause for termination.

In February 2002, Johnson's Medical Staff privileges were revoked after he failed to pay his membership dues by a deadline Johnson claims the Medical Staff imposed arbitrarily and without warning while he was traveling out of the country. Because full membership on the Medical Staff was a condition of his contract, Riverside terminated Johnson soon afterwards. Johnson immediately applied to the Medical Staff for reinstatement, but was informed that he could only regain his status by reapplying to the Staff as a new applicant, which would require him to submit to a hearing before the Medical Staff Credentials Committee. Johnson obliged, and was confronted at the hearing with numerous complaints about his behavior filed by co-workers, all of which he contends were fabricated. After the hearing, the Committee voted to uphold the denial of Johnson's Medical Staff membership. Prior to the completion of the hearing, Riverside filed a report describing the complaints against Johnson with the California Medical Board pursuant to California Business and Professions Code § 805. Johnson argues that the filing of this report was premature and cost him future opportunities for employment.

B

On September 26, 2002, Johnson filed a complaint against Duncanson with the California Department of Fair Employment and Housing ("DFEH") alleging that he had been

harassed, denied employment, and denied privileges to admit patients to Riverside on account of his race and sexual orientation. On September 30, 2002, DFEH issued Johnson right to-sue notices for Duncanson and several other individuals on the Medical Staff and nursing staff.

On September 2, 2003, Johnson filed a complaint in California state court against Riverside and several other defendants setting forth multiple civil rights claims under federal and state law. He voluntarily dismissed that action, however, on October 16, 2003. Later, on December 2, 2003, Johnson filed a complaint in the District Court for the Central District of California against Riverside, the Medical Staff, Duncanson, and other individuals alleging the same causes of action, including three relevant to this appeal: (1) racial discrimination in violation of 42 U.S.C. § 1981; (2) racial and sexual orientation discrimination in violation of California Civil Code § 51 (the "Unruh Civil Rights Act claim") and § 51.5; and (3) racial and sexual orientation discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't. Code §§ 12940 *et seq*.

The defendants moved to dismiss all claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court dismissed Johnson's claims under California Civil Code §§ 51 and 51.5 with prejudice, finding that Johnson had failed to state a claim upon which relief could be granted because neither provision creates a cause of action for employment discrimination. The district court did not specifically address Johnson's § 1981 claims, but dismissed his remaining claims, including his FEHA claims, without prejudice, granting him leave to amend.

Johnson timely filed a first amended complaint which omitted, and thereby waived, all other claims except those mentioned here.[2] Thereafter, he reached a settlement with several

---

[2]Johnson's § 1981 claim against the Medical Staff, which included his contentions that the Medical Staff wrongfully revoked his staff privileges and that the Medical Staff created a hostile work environment, was among those claims waived by the first amended complaint.

defendants, leaving only Riverside, Duncanson, and the Medical Staff as defendants in this action. The district court then dismissed each of Johnson's remaining claims under Rule 12(b)(6) for failure to state a claim.

Johnson appeals. First, he argues that the district court erred in dismissing his § 1981 claims against Duncanson and Riverside, contending that he has sufficiently alleged that the defendants created a racially hostile work environment in violation of that provision. Second, Johnson argues that the district court erred in dismissing his §§ 51 and 51.5 claims against all three defendants because both statutes recognize a cause of action for the type of workplace discrimination Johnson alleges here. Finally, Johnson argues that the district court erred in dismissing his FEHA claims against all three defendants even though the statute of limitations expired, suggesting that he was entitled to equitable tolling. We consider each argument in turn.

II

**[1]** We begin with Johnson's § 1981 claim against Duncanson and Riverside. The district court dismissed such claim without discussion. Nevertheless, we may affirm based on any ground supported by the record. *Papa v. United States*, 281 F.3d 1004, 1009 (9th Cir. 2002). A Rule 12(b)(6) dismissal may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In other words, Johnson's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is not an onerous burden. "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted). Still, Johnson's complaint must, at a minimum, plead "enough facts to state a claim for relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Finally, in reviewing the district court's decision, we view Johnson's complaint in the light most favorable to him, accepting all well-pleaded factual allegations as true, as well as any reasonable inferences drawn from them. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

A

**[2]** Among other things, § 1981 guarantees "all persons" the right to "make and enforce contracts." 42 U.S.C. § 1981(a). This right includes the right to the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," including the relationship between employer and employee. *Id.* § 1981(b). Johnson contends that Duncanson and Riverside were aware of the harassment he faced from his co-workers and failed to take steps to address it, thereby creating a hostile work environment. In this circuit, such claims are cognizable under § 1981. *Manatt v. Bank of Am.*, 339 F.3d 792, 797 (9th Cir. 2003). A hostile work environment, by its "very nature involves repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). To state a hostile work environment claim here, Johnson must allege that "(1) [he] was subjected to verbal or physical conduct because of [his] race, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive work environment." *Manatt*, 339 F.3d at 798 (internal quotation marks omitted).[3] In considering whether the discriminatory conduct was "severe or pervasive," we look to "all the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or

---

[3]Hostile work environment claims under Title VII contain the same elements of a § 1981 hostile work environment claim and, thus, the "legal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." *Manatt*, 339 F.3d at 797.

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).

B

**[3]** At the motion to dismiss stage, Johnson need not support his allegations with evidence, but his complaint must allege sufficient facts to state the elements of a hostile work environment claim. *See Twombly*, 127 S. Ct. at 1974; *see also Williams v. Boeing Co.*, 517 F.3d 1120, 1130 (9th Cir. 2008) ("Even though heightened pleading is not required in discrimination cases, the complaint must still 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002))).

**[4]** Johnson's complaint is rife with allegations that his co-workers harassed him because of his sexual orientation. Nevertheless, because § 1981 creates a cause of action only for those discriminated against on account of their race or ethnicity, such allegations are irrelevant to his claim. *See Jones v. Bechtel*, 788 F.2d 571, 574 (9th Cir. 1986) (holding that a plaintiff could not assert a § 1981 claim based on gender discrimination). Still, Johnson's complaint includes at least three allegations that are relevant to his claim that he was subjected to a hostile work environment because of his race.

**[5]** First, Johnson's encounter with Dr. Vlasak, in which Vlasak uttered a racial epithet and moved as if to strike him, was a serious act of discrimination. While "an isolated incident of harassment by a co-worker will rarely (if ever) give rise to a reasonable fear that [such] harassment has become a permanent feature of the employment relationship," *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 1999), Johnson's complaint contains other relevant allegations. While the

complaint does not allege that Johnson was present at the time when the African-American residency candidate's application was rejected or when the members of the Residency Selection Committee's offensive remarks were made, discriminatory conduct directed at an individual other than the plaintiff may be relevant to a hostile work environment claim. *See, e.g., Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1033-34 (9th Cir. 1998). Finally, the allegations of the nurse's "repeated" requests that Johnson remove trash from the Operating Room, which she viewed as "funny," are also relevant to his § 1981 claim. We have previously held that a co-worker's use of a "code word or phrase" can, under certain circumstances, contribute to a hostile work environment. *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117 (9th Cir. 2004); *see also El-Haken v. BJY Inc.*, 415 F.3d 1068, 1073-74 (9th Cir. 2005) (same). While we are not obligated to accept every conclusory allegation as true, *see, e.g., Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007), we believe the inference that racial animus motivated the nurse's frequent requests that Johnson perform the tasks of a maintenance man is a reasonable one that we must construe in his favor at the motion to dismiss stage.[4]

---

[4]Not *every* conclusory allegation must be accepted as true, however. Johnson's complaint also states that after he was bitten by a security dog stationed in Riverside's emergency room, the dog's trainer told him not to complain to the hospital administrators because the dog was "more popular" with the nurses than Johnson was. The complaint further alleges that this remark "clearly reflected the trainer's opinion that an African American physician . . . was lower on the Hospital's social scale than a dog." Rule 8 requires "allegations plausibly suggesting (not merely consistent with) [racial animus]." *Twombly*, 127 S. Ct. at 1966. While we believe it is plausible to infer that the nurse's comments were racially motivated, the dog trainer's otherwise race-neutral insult is not so easily categorized. We, of course, accept as true Johnson's allegation that such remark was made. Nevertheless, because the remaining allegations in his complaint are sufficient to state a hostile work environment claim, we need not decide whether we must accept his further allegation that the remark was motivated by race.

**[6]** Johnson's complaint provides Duncanson and Riverside with "fair notice of what [his] claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. And, viewing the totality of the alleged circumstances in the light most favorable to him, the complaint puts forth "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. Our notice pleading requirements do not require more. "Indeed, it may appear on the face of the pleadings that recovery is very remote and unlikely but that is not the test." *Swierkiewicz*, 534 U.S. at 515 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Accordingly, we conclude that Johnson's § 1981 claim must survive Duncanson and Riverside's motion to dismiss.

## III

Our next task is to determine whether the district court erred in dismissing Johnson's claims under California Civil Code §§ 51 and 51.5.

## A

### 1

**[7]** California Civil Code § 51 codifies the Unruh Civil Rights Act and provides that all persons within the State of California are "free and equal" and "no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). California courts have interpreted the term "business establishment" in the "broadest sense reasonably possible," *see Burks v. Poppy Constr. Co.*, 57 Cal. 2d 463, 468 (1962), and hospitals such as Riverside meet the definition. *O'Connor v. Vill. Green Owners Ass'n*, 33 Cal. 3d 790, 796 (1983). Nevertheless, the California Supreme Court has expressly held that employment

discrimination claims are excluded from § 51's protection. *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 500 (1970); *Rojo v. Kliger*, 52 Cal. 3d 65, 77 (1990). The court has explained this exclusion by noting that the Unruh Act was designed to prohibit discrimination by business establishments "in the course of furnishing goods, services, or facilities" to its "clients, patrons, or customers," but does not extend to claims for employment discrimination because other California statutes are specifically tailored to provide relief for such conduct, most notably the FEHA, which was passed by the California Legislature in the very same session as the Unruh Act. *Alcorn*, 2 Cal. 3d at 500.

Twenty-six years later in *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859 (9th Cir. 1996), we interpreted the scope of liability available under § 51 in light of *Alcorn* and subsequent California cases and concluded that those precedents established the rule that relief under § 51 was available when the plaintiff was in a relationship with the offending business establishment "similar to that of the customer in the customer-proprietor relationship which the Act and its predecessors have most commonly covered."[5] *Id.* at 874.

---

[5]In *Strother*, we acknowledged that California courts have allowed parties who were "not 'clients, patrons, or customers,' in the traditional sense" to bring claims under § 51. *Id.* at 873. Nevertheless, we determined that the plaintiffs in each of these cases stood in a position with the defendant similar to that of a customer in the "customer-proprietor relationship" the Unruh Act was designed to protect. *Id.* at 873-74 (citing *O'Connor*, 33 Cal. 3d at 796 (holding that condominium owners could bring § 51 claims against their condominium owners' association); *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d. 72, 81 (1985) (holding that female children excluded from membership in the Boys' Club could bring claims against the organization); *Jackson v. Superior Court*, 30 Cal. App. 4th 936, 941 (1994) (holding that an African-American investment advisor who accompanied two clients into a bank could assert a § 51 claim alleging discrimination against the bank even though his clients were the actual customers of the bank); *Rotary Club of Duarte v. Bd. of Dirs.*, 178 Cal. App. 3d 1035, 1059 (1987) (holding that a local chapter of the Rotary Club could challenge the National Rotary Club's "male-only" policy under § 51)).

2

Applying these precedents, the district court dismissed Johnson's § 51 claims against the defendants, reasoning that his allegations amounted to employment discrimination claims excluded from the Unruh Act's protection. One month later, however, the California Court of Appeal's decision in *Payne v. Anaheim Memorial Hospital*, 130 Cal. App. 4th 729 (2005), became final. In that case, the Third Division of the Court of Appeal held that a physician could assert a § 51 claim against the hospital where he treated patients because that physician did not have the type of employment relationship with the hospital which foreclosed § 51 relief. *Id.* at 748-49. Johnson argues that *Payne* has changed the applicable state law and requires us to reverse the district court's dismissal of his claims.

In reviewing the district court's judgment, we must apply state law as it is presently defined, even if state law has been altered subsequent to the district court's decision. *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 541 (1941); *Nelson v. Brunswick Corp.*, 503 F.2d 376, 381-82 (9th Cir. 1974). In interpreting state law, we are bound to follow the decisions of the state's highest court. *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991). When the state's highest court has not spoken on an issue, we must determine what result the court would reach if we were standing in its shoes by examining "state appellate court opinions, statutes and treatises." *Id.* In undertaking this task, "the California Court of Appeal's announcement of a rule of law 'is a datum for ascertaining state law' " which we may not omit unless we are " 'convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1012-13 (9th Cir. 2004) (quoting *Hicks v. Feiock*, 485 U.S. 624, 630 n.3 (1988)) (internal quotation marks omitted).

Accordingly, we must first determine whether *Payne*'s holding applies to the facts of this case. If we answer that

question in the affirmative, we must next determine whether there is any persuasive evidence to suggest that the California Supreme Court would have decided *Payne* differently, such that a contrary result would be warranted here.

3

Several factual distinctions between Johnson's case and *Payne* are readily apparent. First, Johnson's relationship with Riverside differed from Payne's relationship with his hospital in the material respect that Johnson was compensated while Payne was not. In finding Payne's claims against his hospital cognizable under § 51, the court in *Payne* explained, "Payne does not work for the hospital, and has no obligation to treat his patients there as opposed to any other hospital. Anaheim Memorial does not compensate Payne for his medical services, nor does it exercise any direct control over the manner in which he practices. Instead, the hospital merely provides a facility which a qualified physician may access in connection with providing medical care to his patients." *Payne*, 130 Cal. App. 4th at 748. Riverside, on the other hand, paid Johnson $250 per month to be on call in its emergency room and also compensated him for each trauma patient he treated in an amount not to exceed $10,000 per month.

Second, although Johnson's professional services agreement referred to him as a "contractor," Riverside retained control over all material aspects of his activities at the hospital. While the parties' affiliation did not contain every component of the traditional employer-employee relationship (most notably, Riverside was not required to pay Social Security taxes for Johnson or provide him with retirement benefits), Riverside determined the shifts Johnson was responsible to work, the nurses who would be assigned to work with him, and the credentials it would be necessary for Johnson to display when inside the hospital. Riverside also required Johnson to remain a member in good standing on the Medical Staff.

**[8]** Thus, we find Johnson's relationship with Riverside distinguishable from the relationship described in *Payne*. Indeed, Johnson's complaint is based solely on allegations of workplace discrimination, not discrimination in the provision of "goods, services, or facilities" prohibited by § 51. On the other hand, we find it quite similar to the relationship we held insufficient to state a § 51 claim in *Strother*. In that case we determined that a physician could not bring a claim under § 51 against the medical group in which she was a partner because her relationship with the group was more akin to that of an employee than that of a "client, patron, or customer" § 51 was designed to protect. *Strother*, 79 F.3d at 863. Although the plaintiff asserted that her relationship with the medical group entitled her to many benefits, such as "the use of certain medical facilities, medical supplies . . . and other goods, management courses, and a variety of privileges, advantages, and services," we concluded that such benefits were no different than those that would be received by a physician employed by the medical group, and thus determined that regardless of whether the plaintiff was a bona fide partner of the group or an employee, because her relationship with the group was analogous to that of an employee, California law precluded her from seeking relief under § 51. *Id.* at 874-75.

**[9]** We continue to follow our decision in *Strother* and conclude that Johnson's § 51 claims are foreclosed by the fact that his relationship with Riverside was materially indistinguishable from that of an employee. We find nothing in the California Court of Appeal's holding in *Payne* to counsel against such a decision because the hospital in that case neither compensated the plaintiff nor controlled the manner of his practice to the degree Riverside does here. Consequently, it is unnecessary for us to decide whether the California Supreme Court would have decided *Payne* differently. California law continues to require a plaintiff asserting a claim under § 51 to demonstrate that his relationship with the offending organization was "similar to that of the customer in

the customer-proprietor relationship." *Id.* at 874. Johnson has made no such demonstration.

### B

**[10]** Johnson has also asserted claims against the defendants under California Civil Code § 51.5. Section 51.5 provides in relevant part:

> No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristics listed or defined in subdivision (b) . . . of Section 51 . . . .

Cal. Civ. Code § 51.5(a). In *Strother* we interpreted § 51.5 as a mere extension of the Unruh Act. 79 F.3d at 875 (citing *Roth v. Rhodes*, 25 Cal. App. 4th 530, 537 (1994)). Explaining that § 51.5, like § 51, is aimed only at discrimination in "relationships similar to the proprietor/customer relationship," we held that § 51.5 required the plaintiff to make the same showing. *Id.* We see no reason to abandon that determination here. Thus, we conclude that a plaintiff asserting claims under § 51.5 must demonstrate that he stands in a relationship with the offending business establishment similar to that of a customer in a customer-proprietor relationship. As explained above, Johnson has failed to do so here. Accordingly, we conclude that his claims under § 51.5 must meet the same fate as his claims under § 51.

### IV

**[11]** Finally, we must determine whether the district court erred in dismissing Johnson's FEHA claims as barred by the statute of limitations. Under California law, a plaintiff who intends to assert a FEHA claim must first file a complaint with the California DFEH, Cal. Gov't. Code § 12960, and

then must file the claims within one year after the DFEH issues a right-to-sue letter for the defendants listed in the complaint, *id.* § 12965(b). Johnson received a right-to-sue letter from the DFEH on September 30, 2002 and timely filed an action in California state court on September 5, 2003. Nevertheless, he voluntarily dismissed that action on October 16, 2003 and then waited until December 2, 2003, 64 days after the limitations period expired, to file this action in federal court. Johnson contends that his timely state court filing satisfies the statute of limitations under theories of equitable estoppel and equitable tolling. We disagree.

Under California law, equitable tolling will be warranted where the defendants have induced the plaintiff to delay filing until after the statute of limitations has run. *See Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 652 (2003) (citation omitted). We discern nothing in the record to suggest that the defendants' conduct caused Johnson to voluntarily dismiss his state court action or wait an additional 47 days before filing this action in federal court.

**[12]** In addition, California courts have concluded that absent express statutory language, a plaintiff's voluntary dismissal will not entitle him to toll the statute of limitations. *See Wood v. Elling Corp.*, 20 Cal. 3d 353, 359 (1977); *Thomas v. Gilliland*, 95 Cal. App. 4th 427, 433 (2002). Thus, Johnson's voluntary dismissal of his state court action is not an event to which equitable tolling applies.[6]

---

[6]Even if Johnson could demonstrate that he was entitled to equitable tolling, he would not be entitled to toll the period necessary to render his FEHA claim timely. The effect of equitable tolling is that "the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval . . . is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370-71 (2003) (emphasis omitted).

## V

Based on the foregoing, the district court's dismissal of Johnson's § 1981 hostile work environment claim against defendants Duncanson and Riverside is **REVERSED** and **REMANDED**. The dismissal of Johnson's claims under California Civil Code §§ 51 and 51.5 for failure to state a claim upon which relief can be granted and the dismissal of his FEHA claims for failure to comply with the statute of limitations are **AFFIRMED**. Each party shall bear its own costs on appeal.

---

Johnson filed his state action on September 5, 2003, 25 days before the statute of limitations period expired. He voluntarily dismissed the state action 41 days later, on October 16, 2003. Consequently, if equitable tolling applied, Johnson would have been entitled to file his claims in federal court within 41 days of his voluntary dismissal. Johnson delayed filing until December 2, 2003, however, 47 days after his voluntary dismissal, and 6 days after the maximum tolling period would have expired.