
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DAVID C. KWOK,<br>　　　　　Debtor. | BAP No. CC-22-1152-LSC<br>BAP No. CC-22-1153-LSC<br>(related appeals) |
| DAVID C. KWOK,<br>　　　　　Appellant,<br>v.<br>ZHONG QIU LI; JAMES QUAN,<br>　　　　　Appellees. | Bk. No. 2:18-bk-23346-BR<br>Adv. No. 2:22-ap-01026-BR<br><br>**MEMORANDUM\*** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Barry Russell, Bankruptcy Judge, Presiding

Before: LAFFERTY, SPRAKER, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

David C. Kwok appeals the bankruptcy court's orders dismissing his
adversary complaint against appellees and imposing Rule 9011 sanctions.[1]

---

\* This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential
value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101–1532, "Rule" references are to the Federal Rules of
Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil
Procedure.

We agree that the complaint was properly dismissed and that sanctions were appropriate. However, because the record is insufficient to permit us to determine whether the amount of the sanctions was appropriate, we REMAND for further proceedings as set forth below.

## FACTS

**A.    The Shorb bankruptcy and asset sale**

Kwok is the sole member of Shorb DCE, LLC ("Shorb"). In 2017, Shorb filed a chapter 11 petition. The case was converted to chapter 7 on August 30, 2017. Thereafter, the bankruptcy court approved the chapter 7 trustee's ("Shorb Trustee") motion to sell Shorb's primary asset, a 100% ownership interest in an 11-unit apartment building in Alhambra, California (the "Property") for $2,450,000, subject to overbid. The Property had significant equity. James Quan and Zhong Qiu Li (the "Buyers" and "Appellees") were the only bidders, and the bankruptcy court approved the sale to them. The sale closed December 11, 2017.

Unbeknownst to the Shorb Trustee or the bankruptcy court, shortly before the Buyers entered into the purchase agreement for the Property, they signed a promissory note payable to Kwok or Elke L. Coffey (Kwok's girlfriend) in the amount of $150,000 (the "Secret Note"). The unsecured Secret Note (as more fully explained below) states that it is valid upon completion of the Buyers' purchase of the Property and is due in full 45 days after the close of escrow on the Property. The Buyers, however, never paid any amount to Kwok or Coffey on the Secret Note.

2

## B.    The Kwok bankruptcy

Kwok filed a chapter 13 petition in November 2018. The case was converted to chapter 7 a few months later. Kwok scheduled as his primary asset a 100% membership interest in Shorb, but he did not disclose the amount owed to him from the Secret Note, nor did he disclose it to the chapter 7 trustee ("Kwok Trustee") until January 2022.

In July 2019, the Kwok Trustee obtained an order in the Shorb bankruptcy authorizing the distribution of surplus funds from the Shorb estate directly to the Kwok Trustee. After the Shorb Trustee's final report was approved, he paid $468,508.51 to the Kwok Trustee from the Shorb estate.

While the Kwok Trustee was preparing his final report, Kwok's bankruptcy counsel informed him of the existence of the Secret Note. Kwok's counsel provided a copy of the Secret Note and advised that an amendment to Kwok's bankruptcy schedules would be filed to add the Secret Note, but this was never done.

## C.    The adversary proceeding

In January 2022, the Kwok Trustee filed the adversary proceeding against the Buyers that is the subject of this appeal.[2] The complaint alleged claims for: (1) breach of a written contract based on Buyers' failure to pay the Secret Note; (2) avoidance of the sale of the Shorb Property under

---

[2] In a subsequent declaration, the Kwok Trustee explained that he filed the adversary proceeding to avoid the running of the statutes of limitations.

§ 363(n) or alternatively for damages, including punitive damages; and (3) turnover of the Property under § 542.

The Kwok Trustee also moved in the main case to abandon the Secret Note and the adversary proceeding on the ground that, even without those assets, he expected to be able to make a 100% distribution to creditors plus a small surplus distribution to Kwok. Accordingly, he did not believe it worthwhile to pursue the estate's claims against the Buyers due to the increased administrative expenses that would be necessary to pursue those claims. The bankruptcy court granted the motion to abandon.

Thereafter, Kwok substituted himself in as plaintiff in the adversary proceeding. Kwok then filed a second amended complaint ("SAC") which contained the same claims as alleged in the original complaint, plus a fourth claim for financial elder abuse under California Welfare and Institutions Code § 15610.30.

In the SAC, Kwok alleged that while Shorb was still in chapter 11, he hired a broker to list the Property himself, but about six weeks into the Shorb case, Kwok suffered a severe heart attack and was subsequently in and out of the hospital for several months and taking painkillers and antibiotics. It was during this period that the Shorb case was converted to chapter 7, but Kwok alleges that he was unaware of this until a few weeks after the conversion and believed he was entitled to sell the Property as a debtor-in-possession.

4

Kwok further alleged that during this time, the Buyers approached him to express an interest in purchasing the Property. According to the complaint, they convinced Kwok not to market the Property or involve his broker further. Instead, they devised a plan to purchase the Property for $2,450,000. To ensure Kwok's cooperation, Buyers offered an additional $150,000 in the form of a note payable directly to Kwok. They also allegedly promised to allow Kwok to keep an existing apartment he occupied in the Property for two years or until he recovered. Kwok also alleged that Buyers advised him that if he did not do the deal, he would get nothing from the bankruptcy. He alleged that he relied on the Buyers' advice, but, had he known the true facts, he would have requested the broker take an active role in marketing the Property, and he would not have agreed to the deal with the Buyers.

The allegations continue: After the sale closed in December 2017, the Buyers took possession of the Property and permitted Kwok to remain in his unit until April 2018, when the Buyers presented Kwok with a three-day notice to quit. When Kwok asked Li about the payment of the note, Li "walked away saying she did not understand anything about it."

Turning to the specific claims, the SAC alleges that: (1) the Buyers breached the parties' contract by not paying anything on the Secret Note, and Kwok is entitled to recover damages of $150,000 plus interest and attorneys' fees; (2) the sale of the Property should be avoided under § 363(n) or damages of $1.3 million plus punitive damages should be

awarded because the sale price for the Property was controlled by an agreement among potential bidders at the sale, including the Buyers; (3) the Property should be turned over to Kwok pursuant to § 542 because it is property of the estate that has been abandoned; and (4) the Buyers are liable for financial elder abuse. The financial elder abuse claim alleged that, at the time of the negotiations between the parties, Kwok was over the age of 65 and was impaired due to his health condition, and he relied on the advice of the Buyers, who fraudulently induced him to sell the Property at less than market value, which Kwok alleged was $3,750,000. He alleged that the Buyers' conduct was willful, predatory, callous, and fraudulent.

The Buyers filed a motion to dismiss the SAC under Civil Rule 12(b)(6) for failure to state a claim upon which relief may be granted. With respect to the first claim for relief for breach of contract, they argued that the Secret Note lacked consideration; specifically, alleging that the Secret Note was given in exchange for Kwok's cooperation with the sale of the Property, but Kwok did not own the Property. The Buyers argued in the alternative that even if a contract were formed, it was void as against public policy because Kwok had breached his fiduciary duties to the Shorb bankruptcy estate.

With respect to the § 363(n) claim for relief, the Buyers argued that the SAC did not allege all the elements required for such a claim, and the one-year statute of limitations had expired.

6

As to the third claim for relief under § 542, the Buyers argued that this claim must fail because neither the Secret Note nor the Property were property of the Kwok bankruptcy estate.

Finally, with respect to the financial elder abuse claim for relief, the Buyers argued that the SAC did not allege sufficient facts to establish the necessary elements of such a claim because there was no allegation that Kwok's property was taken (the Property belonged to Shorb); Kwok was judicially estopped and lacked standing to bring the claim because he did not list it on his bankruptcy schedules; and the claim was time-barred due to the four-year statute of limitations given that Kwok admitted in the SAC that he was advised as of August 31, 2017 that the sale was required to go through the bankruptcy court.

The Buyers also argued that all four claims for relief were barred by the doctrine of in pari delicto because Kwok admitted in the SAC that he agreed to the Secret Note to obtain funds "outside of escrow" and he did not disclose the Secret Note to either the Shorb Trustee or the Kwok Trustee.

After complying with the safe harbor provisions of Rule 9011 by sending a letter and a proposed motion for sanctions under Rule 9011 to Kwok explaining why his claims were baseless, the Buyers filed the motion for sanctions, concurrent with the motion to dismiss, arguing that the claims in the SAC were frivolous and noting that Kwok had failed to

withdraw the SAC despite being given the statutory 21-day opportunity to do so.

Kwok filed a one paragraph response to the Civil Rule 12(b)(6) motion requesting leave to file a third amended complaint, but he did not contest in any meaningful way the arguments set forth in the motion, nor did he include a proposed amended complaint nor otherwise explain how he would amend the claims. He also filed a brief three-paragraph response to the motion for sanctions arguing that the claims were not frivolous because, except for the elder abuse claim, they were the same ones asserted by the Kwok Trustee. He requested additional time for further investigation and discovery.

The Buyers filed replies pointing out that Kwok had not even contested, let alone refuted, any of the arguments made in their motions.

After a combined hearing, the bankruptcy court entered orders granting both motions. The sanctions order awarded Rule 9011 sanctions of $20,558.50 to Buyers, which allegedly represented their attorneys' fees "incurred and estimated" in bringing the motions. Kwok timely appealed both orders.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (E) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in dismissing the SAC with prejudice?

8

Did the bankruptcy court err in awarding Rule 9011 sanctions?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's decision to grant a motion to dismiss under Civil Rule 12(b)(6). *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572 (9th Cir. BAP 2011). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We review all aspects of the bankruptcy court's award of sanctions for an abuse of discretion. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (Civil Rule 11 sanctions); *Winterton v. Humitech of N. Cal., LLC (In re Blue Pine Grp., Inc.)*, 457 B.R. 64, 74 (9th Cir. BAP 2011), *aff'd in part, vacated in part on other grounds*, 526 F. App'x 768 (9th Cir. 2013). In determining whether the bankruptcy court abused its discretion we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (cleaned up).

"We may affirm on any basis supported by the record." *Caviata Attached Homes, LLC v. U.S. Bank, Nat'l Ass'n (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012) (citation omitted).

9

## DISCUSSION

Kwok raises arguments on appeal that he did not raise in the bankruptcy court. "Ordinarily, an appellate court will not hear an issue raised for the first time on appeal." *Kaass Law v. Wells Fargo Bank, N.A.*, 799 F.3d 1290, 1293 (9th Cir. 2015). Courts may exercise their discretion to consider a matter for the first time on appeal where: "(1) there are exceptional circumstances why the issue was not raised in the trial court; (2) the new issue arises while the appeal is pending because of a change in the law; or (3) the issue presented is a pure question of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court." *Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007).

The Buyers argue that Kwok may not raise new issues on appeal because he has failed to demonstrate exceptional circumstances. The dismissal of Kwok's adversary claims however raises only questions of law that we review de novo and no party will be prejudiced. We, therefore, exercise our discretion to consider his arguments. *See, e.g., City of Reno v. Netflix, Inc.*, 52 F.4th 874, 877 n.2 (9th Cir. 2022) (citing *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1213 (9th Cir. 2020)). As to the amount of the sanctions, we find exceptional circumstances as set forth below that justify our review of that issue.

**A.    The bankruptcy court did not err in dismissing the SAC with prejudice.**

**1.    Legal standard for motion to dismiss under Civil Rule 12(b)(6)**

In reviewing the bankruptcy court's decision on a motion to dismiss, we apply the same standards to Civil Rule 12(b)(6) dismissal motions that all federal courts are required to apply. *In re Belice*, 461 B.R. at 572-73. Under Civil Rule 12(b)(6), a trial court may dismiss a complaint for "failure to state a claim upon which relief can be granted." We must take all the factual allegations in the complaint as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a Civil Rule 12(b)(6) dismissal motion, a complaint must present cognizable legal theories and sufficient factual allegations to support those theories. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008). A complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citations omitted).

**2.    The bankruptcy court did not err in dismissing Kwok's adversary claims.**

The bankruptcy court provided little explanation of its specific reasons for granting the motion to dismiss with prejudice. It appears the

significant reason was Kwok's conduct and involvement in efforts to mislead the court and the parties with respect to the sale of the Property--in other words, the doctrine of in pari delicto.

"The doctrine of in pari delicto dictates that when a participant in illegal, fraudulent, or inequitable conduct seeks to recover from another participant in that conduct, the parties are deemed in pari delicto, and the law will aid neither, but rather, will leave them where it finds them." *Sugarman v. Taylor (In re Yellow Cab Coop., Inc.)*, 602 B.R. 357, 360 (Bankr. N.D. Cal. 2019) (citation omitted). *See also* Cal. Civ. Code § 3517 ("No one can take advantage of his own wrong.").

The allegations in the SAC establish that Kwok's deal with the Buyers was intended to put undisclosed money in Kwok's pocket in violation of his fiduciary duties to the Shorb estate. Thus, Kwok has conceded that he was a participant in illegal, fraudulent, or inequitable conduct. He cannot therefore seek redress against the Buyers for alleged bad conduct in which he participated.

Kwok argues for the first time on appeal that the in pari delicto defense cannot be decided at the pleading stage. But he fails to acknowledge that *In re Yellow Cab Cooperative* involved a similar dismissal of a complaint for failure to state a claim. *Id.* at 358; s*ee also*, *In re Crown Vantage, Inc.*, No. 02-3836 MMC, 2003 WL 25257821, at *6 (N.D. Cal. Sept. 25, 2003), *aff'd sub nom*, *Crown Paper Liquidating Trust v. Pricewaterhousecoopers LLP*, 198 F. App'x 597 (9th Cir. 2006), *cert denied*, 127

12

S.Ct. 1381 (2007) (chapter 11 trustees' complaint dismissed based on in pari delicto). The cases Kwok cites, *Golden State TD Investments, LLC v. Andrews Kurth LLP (In re California TD Investments LLC)*, 489 B.R. 124, 134 (Bankr. C.D. Cal. 2013), and *Elder v. Greer (In re Sand Hill Capital Partners III, LLC)*, Adv. Nos. 10-3089, 10-3091 TC, 2010 WL 4269622, at *3 (Bankr. N.D. Cal. Oct. 25, 2010), were based on their unique facts and do not establish such a bright line rule.

Here, the allegations in the SAC establish that Kwok and the Buyers colluded with the intent to benefit both parties at the expense of the Shorb bankruptcy estate. The in pari delicto defense thus bars Kwok's asserted claims against the Buyers.

### 3. Additional grounds for affirming dismissal of the adversary proceeding with prejudice

Additionally, the breach of contract claim is unenforceable under California statutory law because it is contrary to public policy. Under California law, a contract is unenforceable if it is (1) "Contrary to an express provision of law;" (2) "Contrary to the policy of express law, though not expressly prohibited; or," (3) "Otherwise contrary to good morals." Cal. Civ. Code § 1667; *see also Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.,* 6 Cal. 5th 59, 73-74 (2018) (attorney contract that had as its object conduct violating the Rules of Professional Conduct was unenforceable as contrary to public policy). A contract which purports to do what § 363(n) forbids is contrary to an express provision of law.

13

The § 542(a) claim also fails. That statute provides, in relevant part: "[A]n entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." It is not clear Kwok has standing to assert a claim under this section. *See Collect Access LLC v. Hernandez (In re Hernandez)*, 483 B.R. 713, 725 (9th Cir. BAP 2012) (chapter 7 debtor generally lacks standing to assert a claim for turnover). Even if Kwok had standing, the statute explicitly excepts from its scope property that is of inconsequential value or benefit to the estate. Given that the Kwok Trustee abandoned this claim, there is no viable argument that Kwok may recover the Property for the benefit of the estate.

The remaining claims are time-barred.[3] A claim under § 363(n) for avoidance of a sale[4] is governed by the one-year statute of limitations applicable to motions brought under Civil Rule 60(b)(3) (applicable via Rule 9024). *Robertson v. Isomedix, Inc. (In re Int'l Nutronics, Inc.)*, 28 F.3d 965, 968-69 (9th Cir. 1994). The sale closed on December 11, 2017; the initial

---

[3] The Kwok Trustee was unaware of the Secret Note and other facts underlying the claims until shortly before the adversary proceeding was filed. This happenstance may have impacted the triggering of the limitations periods as it applied to the Kwok Trustee, but not to Kwok.

[4] Avoidance of the sale does not appear to be a viable remedy given that the

adversary complaint was filed January 19, 2022, over four years later. Therefore, the claim is time-barred. And bankruptcy courts considering the issue have held that damages claims under § 363(n) are governed by the analogous state law statute of limitations, i.e., for fraud claims. *See Szybist v. Aircraft Acquisition Corp. (In re Taylorcraft Aviation Corp.)*, 163 B.R. 734, 738 (Bankr. M.D. Pa. 1993); *In re Am. Paper Mills of Vt., Inc.*, 322 B.R. 84, 90-91 (Bankr. D. Vt. 2004). The California statute of limitations for fraud claims is three years. Cal. Civ. Proc. Code § 338(d). As noted, the adversary proceeding was filed more than four years after the sale closed; the claim is thus time-barred.

The financial elder abuse claim is also untimely. Such claims have a four-year statute of limitations. *See* Cal. Welf. & Inst. Code § 15657.7 ("An action for damages pursuant to Sections 15657.5 and 15657.6 for financial abuse of an elder . . . shall be commenced within four years after the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered, the facts constituting the financial abuse.") The SAC alleges that Kwok did not learn the case was converted until late September 2017, and the sale closed in December 2017. Even if the elder abuse claim relates back to the filing of the original complaint, that complaint was filed in January 2022, more than four years after the alleged abuse.

---

Property belonged to Shorb, not Kwok.

For the foregoing reasons, Kwok's allegations in the SAC fail to state a viable claim, and he did not explain how he could amend the SAC to address its deficiencies. Accordingly, the bankruptcy court correctly dismissed the SAC without leave to amend. *See Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (denying leave to amend as futile where plaintiffs did not propose any specific allegations that might rectify their failures, which demonstrated their inability to make the necessary amendment).

**B.  While the bankruptcy court did not err in finding that Rule 9011 sanctions were appropriate, it nevertheless did not make sufficient findings to permit a determination of whether the amount of the sanctions was appropriate.**

**1.  Sanctions under Rule 9011 were appropriate.**

Rule 9011 imposes "an affirmative duty to conduct a reasonable investigation into the facts and the law before filing" a pleading, motion, or other paper with the court. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991) (interpreting Civil Rule 11). The standard is an objective one, even when the pleading is submitted by a pro se party. *Grantham v. Serrano (In re Virginia-Coast Highway Dev., Inc.)*, BAP No. CC-06-1169-BKMo, 2006 WL 6811028, at *4 (9th Cir. BAP Dec. 26, 2006) (citing *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1425 (1st Cir. 1992)). Rule 9011 sanctions against the signer of a paper are appropriate when the paper is either (1) frivolous or (2) filed for an improper purpose. *Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1441 (9th Cir. 1991).

16

Kwok's response to the Rule 9011 motion is telling. In it, he stated only that the SAC was not frivolous because it was initially filed by the Kwok Trustee, and he simply amended it. He also requested an opportunity to investigate further. In his appellate brief, he argues that he relied on the Kwok Trustee's investigation. It is clear from these statements that Kwok did not undertake any independent investigation into the law and facts before filing the SAC, let alone a reasonable one. Had he done so, he would have uncovered the issues outlined above.

Moreover, Rule 9011 also imposes an obligation to comply with the procedures included in the Rule concerning notice to the allegedly offending party and the opportunity to respond to that notice. Observance of this procedure is critical to ensure that due process concerns re the award of sanctions are satisfied, and the requirement that the responding party acknowledge this notice and engage in the process of reviewing what they have filed facilitates the overall purpose of the rule—to ensure that the filing, or at least the pursuit, of baseless claims is minimized.

And, if a party intends to oppose a motion for sanctions, Rule 9011 at least implies, if it does not expressly include, a duty to inform the reviewing court in sufficient detail the factual and legal inquiries made, the putative justification for the claims asserted, and any other details necessary for the court to consider the serious question of whether the claimant violated the duties imposed by Rule 9011, and should be sanctioned.

17

Kwok failed to observe or perform any of these required tasks. Accordingly, he did not meet the requirement to ensure that the claims he asserted were "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

We agree that the filing of the SAC was sanctionable conduct under Rule 9011. Kwok's failure to respond to the allegations within the 21-day safe harbor period only strengthens the position that there is no error by the bankruptcy court in granting the motion.

### 2. The bankruptcy court did not make sufficient findings to permit an appropriate review of the amount of sanctions.

Again, Kwok did not raise this issue before the bankruptcy court although he argues it at length in his appellate briefs. We find that there are exceptional circumstances to consider this argument because 1) the amount is not insignificant, and 2) while the bankruptcy court clearly intended to reimburse Buyers for their actual loss, i.e., attorneys fees incurred opposing the SAC, there is a complete lack of evidence for the amount of the actual attorneys fees incurred.

The bankruptcy court has wide discretion in determining the amount of a sanctions award. *Kowalski-Schmidt v. Forsch (In re Giordano)*, 212 B.R. 617, 622 (9th Cir. BAP 1997), *aff'd in part, rev'd in part on other grounds sub nom., Giordano v. Opportunity Mgmt., Inc. (In re Giordano)*, 202 F.3d 277 (9th Cir. 1999) (table). We recognize that, when reviewing an order for abuse of

discretion, we may not substitute our judgment for that of the bankruptcy court. *Hinkson*, 585 F.3d at 1251.

The evidentiary basis for the amount awarded however is exceptionally slight. The motion for sanctions included a declaration of Lane K. Bogard which stated in part:

> As a consequence of Plaintiff's failure to dismiss or amend the Second Amended Complaint voluntarily, my clients have incurred or will incur attorneys' fees as follows:
>
> A. Preparation of the letter dated May 27, 2022, giving Plaintiff twenty-one (21) days to withdraw the Complaint - 1.5 hours;
>
> B. Preparation of this Motion for Sanctions- 5 hours;
>
> C. Preparing the Request for Judicial Notice in support of the Motion for Sanctions-.5 hours;
>
> D. Legal research related to the Motion for Sanctions- 2.0 hours;
>
> E. Reply to an Opposition to the Motion for Sanctions- 10.0-15.0 hours;
>
> F. Anticipated Motion for Judgment on the Pleadings and/or Motion to Dismiss - 30.0.0-40.0 hours;
>
> G. Anticipated Reply to an Opposition to the Motion for Judgment on the Pleadings and/or Motion to Dismiss Summary Judgment- 20.0 to 30.0 hours;
>
> G. Anticipated appearance at the hearing on the Motion for Judgment on the Pleadings and/or Motion to Dismiss - 2.0-4.0 hours; and
>
> H. Anticipated appearance at the hearing on this Motion for Sanctions - 2.0-4.0 hours.
>
> Total: 73.0- 102.0 hours.

The declaration went on to say that "[i]t is also anticipated" that other attorneys in the firm would spend additional specific time working on the motion to dismiss and the motion for sanctions. It concluded with an estimate that the amount of attorney's fees "to be incurred by my clients will be between $20,558.50 and $28,058.50." The declaration in the filed motion is the same declaration that was included with the letter warning Kwok that the motion was coming if he did not withdraw the SAC. It had not been updated to the actual time spent and therefore the resulting cost to the Buyers. The declaration includes no more than a few hours of time actually incurred; the remainder being estimated leaving the actual amount to nothing more than conjecture.

The two motions were heard together and the entire hearing time was no more than 11 minutes. The bankruptcy court made no findings regarding the amount of sanctions it awarded. It simply stated:

> As far as the sanctions, I'm going to grant the sanctions in the amount of an order for 20,558.50. Now, I don't know if you can pay it. That's a different question. But it's important for you to understand you can't keep amending things and filing, in my opinion, frivolous complaints and expect there's no consequences. They had to hire attorneys and they haven't been paid.
>
> Hr'g Tr. (Jul. 12, 2022) at 10:18-24.

It added:

> And the sanctions . . . they have incurred probably more than the amount that I've just described, but this has to end.

20

You don't have [the] ability to just without any consequences to keep amending and amending. They gave you fair warning that this would happen.

Hr'g Tr. (Jul. 12, 2022) at 11:6-13.

The Supreme Court confirmed in *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017), that "such a sanction, when imposed pursuant to civil procedures, must be compensatory rather than punitive in nature." (Citation omitted). "[A] sanction counts as compensatory only if it is calibrated to the damages caused by the bad-faith acts on which it is based. A fee award is so calibrated if it covers the legal bills that the litigation abuse occasioned." *Id.* (cleaned up).

The only evidence presented to the bankruptcy court regarding the legal bills was an estimate made by counsel roughly a month before nearly all of the work was done. And much of the anticipated work likely did not occur. For example, Kwok's opposition to the motion for sanctions was three short paragraphs. Therefore it is a stretch to say that the reply took 10.0-15.0 hours, just for Mr. Bogard. The opposition to the motion to dismiss was a single paragraph for which the original estimate for the reply was 20.0 to 30.0 hours. We can only speculate about the actual time spent on that task.

In short, the bankruptcy court's minimal findings based on even less evidence are not sufficient to permit us to review the amount awarded in the order granting sanctions.

## CONCLUSION

We agree that the SAC was properly dismissed and that Rule 9011 sanctions were appropriate, especially given that the safe harbor procedure under Rule 9011 was followed. However, because there is insufficient record to permit us to determine whether the amount of the sanctions was appropriate, we REMAND to permit the bankruptcy court to make further findings regarding the appropriate amount of sanctions.

And one last observation.

This dispute arose from a highly problematic transaction, wrongfully entered into by each of these parties. We do not suggest that the in pari delicto doctrine would provide a defense against the Buyers' Rule 9011 motion, since Kwok's acts are violative of Rule 9011 and separate and discrete from any underlying offense or misdeed shared between the parties. However, in a broader, ethical sense, it can hardly escape notice or remark that this entire unfortunate situation might have been avoided, had Buyers simply managed to avoid attempting to abuse the sale process in the Shorb bankruptcy case, and potentially defrauding the creditors of that estate. What, if anything, to make of that observation will be for the bankruptcy court to determine on remand.