FILED

JUN 02 2015

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   NC-14-1139-KiTaD |
| ) | |
| ROSANNA MAC TURNER, ) | Bk. No.   12-44811 |
| ) | |
| Debtor. ) | Adv. No.   14-4001 |
| _____ ) | |
| ) | |
| ROSANNA MAC TURNER; DAVID ) | |
| G. TURNER, ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| WELLS FARGO BANK, N.A.; ) | |
| CITIGROUP GLOBAL MARKETS ) | |
| REALTY CORP.; U.S. BANK, N.A. ) | |
| as Trustee for the Citigroup ) | |
| Mortgage Loan Trust Inc., ) | |
| Mortgage Pass-Through ) | |
| Certificates, Series 2005-4; ) | |
| CITIMORTGAGE, INC., ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Argued on May 14, 2015, at San Francisco, California
and Submitted on May 26,[2] 2015,

Filed - June 2, 2015

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Roger L. Efremsky, Chief Bankruptcy Judge, Presiding

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[2] We announced at oral argument that this appeal would not be submitted until eleven days post-oral argument to allow appellees time to file a Notice of Supplemental Authority and appellants to respond thereto. Because May 25, 2015, is a federal holiday, the submission date is May 26, 2015.

Appearances: Michael James Yesk of Yesk Law argued for appellants Rosanna Mac Turner and David G. Turner; Bernard Kornberg of Severson & Werson argued for appellees Wells Fargo Bank, N.A., Citigroup Global Markets Realty Corp., U.S. Bank, N.A., as Trustee for the Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2005-4, and CitiMortgage, Inc.

Before: KIRSCHER, TAYLOR and DUNN, Bankruptcy Judges.

Chapter 13[3] debtor Rosanna Mac Turner ("Debtor") and her spouse, David G. Turner (collectively, "Turners"), appeal an order dismissing with prejudice their adversary complaint for failure to state a claim against defendants Wells Fargo Bank, N.A. ("Wells Fargo"), Citigroup Global Markets Realty Corp. ("Citigroup"), U.S. Bank, N.A. ("U.S. Bank") as Trustee for the Citigroup Mortgage Loan Trust Inc., Mortgage Pass-Through Certificates, Series 2005-4 ("Trust" or "Trust Pool"), CitiMortgage, Inc. ("CitiMortgage") and NBS Default Services, LLC ("NBS") (collectively, "Defendants"). We conclude, as did the bankruptcy court, that the Turners lack standing to assert claims against Defendants based on alleged violations of a mortgage trust's pooling and servicing agreement, and we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Prepetition events

In 2005, the Turners obtained a $904,000 loan from Wells Fargo related to their home located in Livermore, California

---

[3] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

-2-

("Residence").[4]  The Turners signed a promissory note ("Note") and a deed of trust ("DOT") in favor of Wells Fargo to secure repayment of the Note.  The Note allows for transfer and entitles whomever holds it to receive payments.  The Turners directed Commonwealth Land Title to record the DOT, which named Fidelity National Title Insurance Company as trustee and Wells Fargo as lender and beneficiary.  The DOT entitles the lender to substitute the trustee without notice, assign the Note to third parties without notice, and to foreclose upon the Residence in case of default.

According to a Mortgage Securitization Audit and Analysis Report obtained by the Turners in 2013, Wells Fargo sold the Note and DOT on August 1, 2005, to the Trust, which acquired and pooled residential mortgages; interests in the trust were then sold to investors as mortgage-backed securities, subject to a Pooling and Servicing Agreement ("PSA").  U.S. Bank acted as trustee and Citigroup served as the sponsor/seller for the Trust.  The Turners claimed New York trust law governed the Trust.

Wells Fargo subsequently assigned its beneficial interest under the DOT to Citigroup on May 9, 2011 (the "Assignment").  The Assignment was recorded on May 12, 2011.

The Turners defaulted on the Note, and on February 10, 2012, NBS "as either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under the [DOT]" recorded a notice of default ("NOD").

[4] The Turners received an additional loan for $350,000 in this same transaction and executed a second position deed of trust in favor of Wells Fargo.  The second deed of trust is not at issue.

-3-

The NOD indicates that Wells Fargo, who has continued to service the loan, was the contact for any payment arrangements. The attached declaration indicates that "beneficiary" Wells Fargo complied with the notice requirements under CAL. CIV. CODE § 2923.5.

On May 2, 2012, a Substitution of Trustee ("SOT") was recorded, whereby Citigroup appointed NBS to substitute in as trustee of the DOT.[5] The SOT was executed on January 23, 2012, and issued by Wells Fargo as "servicing agent" for Citigroup.

NBS, as trustee, recorded a notice of sale ("NOS") on May 16, 2012. A trustee's sale was scheduled for June 5, 2012, but was postponed due to Debtor's bankruptcy filing. No trustee's sale has occurred to date.

**B.    Postpetition events**

**1.    Debtor's bankruptcy filing**

Debtor, pro se, filed a chapter 13 bankruptcy case on June 4, 2012. She valued the Residence at $1,066,800, with secured claims totaling $1,261,000, and identified Wells Fargo as the secured lender. Debtor later filed amended schedules, reflecting the Residence's value at $1 million and conceding that $904,000 was due to Wells Fargo on the Note.

With the assistance of counsel, Debtor filed a first amended chapter 13 plan on September 4, 2012 ("Plan"). Debtor agreed to pay the arrearage on the Note totaling $36,441. The Plan proposed monthly payments of $1,226 for 60 months, with a monthly payment of $4,049.19 to be paid directly to Wells Fargo on the Note. The bankruptcy court confirmed Debtor's Plan on October 4, 2012.

---

[5] The Turners alleged this fact, but the parties provided no document establishing such fact.

-4-

Meanwhile, on September 19, 2012, Citigroup, by Wells Fargo as its attorney-in-fact, recorded a Corporate Assignment of Deed of Trust, assigning its beneficial interest under the DOT to U.S. Bank, as trustee of the Trust (the "Second Assignment").

After Debtor failed to make any of the direct Note payments per the Plan, U.S. Bank moved for relief from stay one year later on October 10, 2013. Debtor did not oppose the motion. The bankruptcy court granted U.S. Bank relief from stay on November 6, 2013 ("Stay Relief Order").

**2.     The Turners' state court action against Defendants**

On November 22, 2013, the Turners filed suit against Defendants in the Alameda Superior Court, alleging seven claims[6]: (1) Wrongful Foreclosure, asserting that none of the Defendants was the true beneficiary under the DOT and that Defendants had no authority to invoke the power of sale, in violation of CAL. CIV. CODE § 2924 et seq.; (2) Breach of Express Agreement, asserting that Defendants breached the DOT by improperly invoking the power of sale and that they also breached the terms of the PSA; (3) Breach of Implied Agreement based on Defendants' breach of the Trust and PSA; (4) Slander of Title based on Defendants' wrongful recording of the Assignment, the SOT, the NOD and the NOS; (5) Violation of CAL. CIV. CODE § 2923.5 based on Citigroup's inability to comply with the statute because it was not the "beneficiary" of the DOT when the NOD was filed; (6) Violation of 18 U.S.C. § 1962 ("RICO") based on Defendants' wire and mail fraud

---

[6] Although these seven claims for relief may constitute causes of action under state law, as Defendants removed this state court action to the bankruptcy court, we will for purposes of this memorandum refer to them as "claims."

-5-

in purporting to be the holders of the beneficial interest under the DOT; and (7) Violation of CAL. BUS. & PROF. CODE § 17200 et seq. based on Defendants' unlawful and unfair business practices in wrongfully foreclosing on the Residence.[7]

The Turners' claims stemmed from their general allegation that defects occurred in the securitization process in 2005. In short, the Turners alleged that Wells Fargo's purported transfer of the Note and DOT to the Trust — by way of the Assignment to Citigroup in May 2011 — was void because the purported Assignment occurred nearly six years after the Trust Pool had closed, in violation of the PSA. The Turners alleged that because of the procedural defects in the securitization, the subsequent assignments of the DOT to Citigroup and U.S. Bank, the SOT substituting NBS as trustee, the NOD and the NOS were likewise void. Consequently, the foreclosure process initiated by Defendants was invalid and wrongful because none of them held any beneficial interest in the DOT.

### 3. Defendants remove the Turners' action to bankruptcy court

#### a. Defendants' motion to dismiss

Defendants timely removed the Turners' action to the

---

[7] While the Turners' statement of issues on appeal makes mention of all seven claims pled in their complaint, their brief does not advance any arguments with respect to how the bankruptcy court erred in dismissing their claims for Breach of Implied Agreement, Slander of Title, RICO and Violation of CAL. BUS. & PROF. CODE § 17200. Therefore, we consider these claims to be abandoned and do not discuss them any further. See Branam v. Crowder (In re Branam), 226 B.R. 45, 55 (9th Cir. BAP 1998), aff'd, 205 F.3d 1350 (9th Cir. 1999)(an issue not adequately addressed by appellant in its opening brief is deemed abandoned). We consider only the Turners' claims for Wrongful Foreclosure, Breach of Express Contract and Violation of CAL. CIV. CODE § 2923.5.

-6-

bankruptcy court and moved to dismiss the complaint under Civil Rule 12(b)(6) ("Motion to Dismiss"). As for the Turners' wrongful foreclosure claim, Defendants argued that the Turners, who were not parties to the PSA or third-party beneficiaries of it, lacked standing to challenge the validity of the DOT assignments or NBS's recording of the NOD based on any alleged violations of the PSA. Defendants disputed the Turners' reliance on Glaski v. Bank of America, 218 Cal.App.4th 1079 (2013), contending that several California courts have declined to follow it. In Glaski, the California Court of Appeal for the Fifth District held that the assignment of a deed of trust to a securitized investment trust is void under New York trust law if the assignment violated the trust's governing PSA. Glaski further held that the borrower had standing to challenge foreclosure on the basis of the void assignments. Id. at 1094-1097.

Defendants relied on Jenkins v. JPMorgan Chase Bank, N.A., 216 Cal.App.4th 497 (2013), decided three months before Glaski and holding to the contrary. In Jenkins, the California Court of Appeal for the Fourth District held that the borrower, as an unrelated third party to the securitized investment trust, lacked standing to challenge foreclosure on the basis of purported violations of the trust's pooling and servicing agreement. Id. at 514-15. Defendants further argued that the Turners had not alleged any prejudice or particularized injury traceable to the challenged assignments; they did not dispute their default and had not claimed they paid the original holder of the Note but were not given credit for those payments by the assignee — i.e., Citigroup or U.S. Bank. Defendants argued it was the Turners' default that

-7-

caused the foreclosure, not any purported defect in the assignments of the Note and/or DOT; they were in no different position than if the Note and DOT had never been assigned.

Defendants argued that the Turners' breach of contract claim also failed because it was based on the erroneous belief that they had standing to challenge alleged breaches of the PSA. Further, the NOD was not void as the Turners had alleged; the recordation of the SOT was conclusive evidence that NBS was the proper foreclosure trustee and had the right to issue the NOD. Defendants also argued that the Turners could not sue for breach of contract when they were in default on the Note, a default which Debtor admitted in her petition, schedules and Plan. Finally, argued Defendants, even if the Turners had standing as third-party beneficiaries to the PSA, they failed to allege any other elements of a claim for breach of contract, particularly damages.

Regarding violations of CAL. CIV. CODE § 2923.5, Defendants argued this claim failed because the Turners failed to allege that they were not contacted about their options to avoid foreclosure and/or that Defendants failed to comply with the statute; rather, they alleged that any contact was insufficient because it was not undertaken by the "true beneficiary." Defendants argued that contact by an "agent" satisfied the statute.

In support of their Motion to Dismiss, Defendants asked the bankruptcy court to take judicial notice of the following documents filed either in the state court action or in Debtor's bankruptcy case: the DOT recorded in 2005; the Assignment to Citigroup recorded on May 12, 2011, and the Second Assignment to U.S. Bank recorded on September 19, 2012; the NOD recorded on

-8-

February 10, 2012, and the NOS recorded on May 16, 2012; Debtor's bankruptcy petition and initial schedules; Debtor's Plan and confirmation order; and U.S. Bank's motion for relief from stay and the Stay Relief Order.

### b. The Turners' opposition to the Motion to Dismiss

The Turners opposed the Motion to Dismiss and Defendants' supporting RJN. They contended that the RJN should be denied because Defendants were seeking judicial notice of the truth of the statements asserted within the documents, which constituted hearsay and were reasonably subject to dispute.

Relying on Glaski, the Turners contended they had standing to challenge Defendants' wrongful foreclosure of the Residence based on the void assignments of the DOT. The Turners further contended they had stated sufficient facts for their breach of contract claim. Again, basing this claim on alleged breaches of the DOT and PSA, the Turners contended that because Wells Fargo recorded the Assignment to Citigroup years after the Trust Pool had closed, Wells Fargo was not the true beneficiary of the DOT and therefore could not have appointed NBS as trustee to record the NOD in February 2012. In addition, NBS could not have been properly substituted as trustee because the SOT was recorded after the break in the chain of title occurred due to improper securitization.

As for the Turners' claim for violation of CAL. CIV. CODE § 2923.5, they now contended they were never contacted by **anyone** at least 30 days prior to the recording of the NOD to discuss options in lieu of foreclosure, despite the declaration attached to the NOD stating that contact had been made. They failed to

-9-

allege this new fact in their complaint. In any event, the Turners argued that failure to comply with the statute rendered the NOD and all subsequent proceedings based on it, including the NOS, invalid and void.

**4.    The bankruptcy court's ruling on the Motion to Dismiss**

The bankruptcy court held a hearing on Defendants' Motion to Dismiss on February 27, 2014. After considering brief argument from the Turners' counsel, the court first ruled on Defendants' RJN, overruling the Turners' objection and taking judicial notice of Debtor's bankruptcy filings and the documents relied upon by the complaint.

The bankruptcy court then ruled on the Motion to Dismiss, granting it as to all seven claims and denying leave to amend. The court found that the Turners' complaint failed to state a claim for wrongful foreclosure because: (1) California's nonjudicial foreclosure law cannot be used by borrowers to challenge a beneficiary's authority to enforce its note; (2) the record established Defendants' compliance with CAL. CIV. CODE § 2924 et seq. and the Turners admitted their default; (3) the Turners lacked standing to complain about PSA issues or to challenge the validity of the assignments because they could not show particularized injury traceable to the challenged assignments; and (4) the Turners had failed to alleged prejudice; it was their default that caused the foreclosure process to begin.

The bankruptcy court found that the Turners' complaint also failed to state a claim for breach of express contract, because it incorrectly alleged that the NOD was invalid because the SOT was not issued by the correct beneficiary and, thus, the DOT was

-10-

breached. In the court's opinion, the recorded SOT conclusively established that NBS had the right to issue the NOD. Further, a party in default could not enforce the DOT. Finally, the Turners had not alleged any damages; the PSA arguments made in support of their wrongful foreclosure claim failed for this claim as well.

Lastly, the bankruptcy court found that the Turners' complaint failed to state a claim for violation of CAL. CIV. CODE § 2923.5, because the declaration attached to the NOD stated that the Turners were contacted prior to the filing of the NOD in accordance with the statute and the Turners never alleged they were not contacted; they alleged only that they were not contacted by the "true beneficiary." Because contact can be made by an agent, the Turners had not alleged facts to support a violation of CAL. CIV. CODE § 2923.5. The Turners timely appealed the dismissal order entered on March 10, 2014.[8]

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err when it granted the Motion to Dismiss?

2. Did the bankruptcy court abuse its discretion in denying leave to amend the complaint?

## IV. STANDARDS OF REVIEW

We review de novo the bankruptcy court's Civil Rule 12(b)(6) dismissal. Barnes v. Belice (In re Belice), 461 B.R. 564, 572

---

[8] Debtor's bankruptcy case was dismissed while this appeal was pending on May 13, 2014, for failure to make plan payments.

-11-

(9th Cir. BAP 2011). When we review a matter de novo, we consider the matter anew as if the bankruptcy court had not previously ruled. Sachan v. Huh (In re Huh), 506 B.R. 257, 262 (9th Cir. BAP 2014)(en banc).

The court's decision to not grant leave to amend is reviewed for an abuse of discretion. Zadrozny v. Bank of N.Y. Mellon, 720 F.3d 1163, 1167 (9th Cir. 2013). A bankruptcy court abuses its discretion if it applied the wrong legal standard or misapplied the correct legal standard or its factual findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

## V. DISCUSSION

**A. Standards for dismissal under Civil Rule 12(b)(6)**

Under Civil Rule 12(b)(6), made applicable in adversary proceedings by Rule 7012, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." To survive a motion under Civil Rule 12(b)(6), a complaint must present cognizable legal theories and sufficient factual allegations to support those theories. Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121-22 (9th Cir. 2008).

As the Supreme Court has explained:

> a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(internal citations and

-12-

quotation marks omitted). See also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)(court is not required to accept any legal characterizations cast in the form of factual allegations).

By definition, a claim cannot be plausible when it lacks any legal basis. Cedano v. Aurora Loan Servs. (In re Cedano), 470 B.R. 522, 528 (9th Cir. BAP 2012). A dismissal under Civil Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson, 534 F.3d at 1121.

We may use judicially noticed facts to establish that a complaint does not state a claim for relief. See Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1016 n.9 (9th Cir. 2012). We can take judicial notice of the existence, filing and content of documents in Debtor's underlying bankruptcy case. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989).

We also may consider the existence and content of documents attached to and referenced in the complaint as exhibits. Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001); Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Even when a document is not attached to the complaint, we may consider its existence and contents when its authenticity is not contested and when it necessarily is relied upon by the plaintiffs in their complaint. See United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003); Lee, 250 F.3d at 688.

**B.    The bankruptcy court did not err when it granted the Motion to Dismiss.**

The issues the Turners state are presented on appeal do not

-13-

align with much of the arguments in their opening brief or, for that matter, the actual rulings of the bankruptcy court. In any event, before we address the merits of their specific arguments, we first address their general arguments that: (1) the bankruptcy court made incorrect "factual findings" as to the secured status of the Note by wrongfully taking judicial notice of the truth of the matters asserted in Debtor's bankruptcy documents; (2) their claims were timely filed or were equitably tolled due to Defendants' deceitful acts; and (3) the doctrines of issue or claim preclusion did not apply to the Plan confirmation order or the Stay Relief Order.

The Turners contend the bankruptcy court improperly determined the Note was a secured obligation based on Debtor's statements made in her schedules, Plan and confirmation order, which led to the court's erroneous conclusion that they lacked standing to challenge the assignments. While the bankruptcy court questioned the Turners' counsel why Debtor should not be bound by statements in her bankruptcy documents that the Note was a secured obligation, the court did not make a "finding" that the Note was in fact secured. The only observation it made respecting the Note is that Debtor admitted the Turners' default in her confirmed Plan.

And, contrary to the Turners' argument, the court was free to consider Debtor's admission of default in her Plan under Fed. R. Evid. 801(d)(2) as a party admission. Alternatively, because the Plan's authenticity was not contested nor was it reasonably subject to dispute, the court could take judicial notice of its contents under Fed. R. Evid. 201. In re E.R. Fegert, Inc.,

-14-

887 F.2d at 957-58. However, any alleged "finding" as to the Note's secured status is of no moment because, as we explain more thoroughly below, that is not the basis for the bankruptcy court's determination that the Turners lack standing to challenge the assignments.

The Turners next argue that their claims alleging securitization irregularities were timely filed or were equitably tolled. The issue of timeliness was never raised by Defendants or considered by the bankruptcy court. It certainly was not a basis for any of the court's rulings on their claims. Therefore, we fail to see the merit of this argument. In any event, the Turners' claims regarding defects in the securitization process fail for reasons other than untimeliness.

Finally, the Turners argue that issue or claim preclusion did not apply to the Plan confirmation order or the Stay Relief Order. We fail to see where the bankruptcy court applied either doctrine in its decision to dismiss. It appears that the Turners do not want to be precluded from raising the question of U.S. Bank's beneficial interest under the DOT based on concessions made in the Stay Relief Order — that U.S. Bank was authorized to foreclose its "security interest" in the Residence. Notably, the Turners' claims do not turn on statements made in the Stay Relief Order or the Plan confirmation order with respect to U.S. Bank's (or any other Defendant's) purported security interest in the Residence.

Turning now to the merits of the Turners' claims for Wrongful Foreclosure, Breach of Express Contract and Violation of CAL. CIV. CODE § 2923.5, we conclude that each fails to state a claim for relief. To maintain a wrongful foreclosure claim, a plaintiff

-15-

must allege that: (1) defendants caused an illegal, fraudulent or willfully oppressive sale of the property pursuant to a power of sale in a deed of trust; (2) plaintiff suffered prejudice or harm; and (3) plaintiff tendered the amount of the secured indebtedness or was excused from tendering. Lona v. Citibank, N.A., 202 Cal.App.4th 89, 104 (2011).

To state a breach of contract claim, a plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance; (3) defendant's breach; and (4) resulting damages to the plaintiff. Oasis W. Realty, LLC v. Goldman, 51 Cal.4th 811, 821 (2011).

Finally, CAL. CIV. CODE § 2923.5 requires that, before a notice of default may be filed, the "mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent" contact the borrower in person or by phone to "assess" the borrower's financial situation and "explore" options to prevent foreclosure. CAL. CIV. CODE § 2923.5(a)(1) & (2).

These three claims essentially turn on whether the Turners have standing to challenge the foreclosure based on alleged deficiencies they claim occurred in the securitization process. Specifically, the Turners contend the Assignment of the DOT by Wells Fargo to Citigroup in May 2011 was void, because it was transferred years after the Trust Pool had closed in 2005, which violated the terms of the PSA. As a result, they contend, CitiGroup was not the true beneficiary under the DOT and therefore did not have authority to cause NBS to record the NOD or the NOS. The Turners further contend the Second Assignment to U.S. Bank is also void based on these same defects.

-16-

The legal basis for the Turners' claims for relief is state law. When we must apply state law to resolve an issue and the state's highest court has not yet addressed the issue, our job as a federal court applying state law is to predict how the state's highest court would resolve the issue. Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1203 (9th Cir. 2002). Unless we are convinced the California Supreme Court would decide the issue differently, we are obliged to follow the decisions of California's intermediate appellate courts. Vestar Dev. II, LLC v. Gen. Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001). However, as demonstrated by Jenkins and Glaski, California's intermediate appellate courts are divided on the issue of whether borrowers have standing to challenge assignments of their deeds of trust based on an alleged violation of a pooling and servicing agreement to which they were not a party.

The California Supreme Court has recently granted review from an intermediate appellate court decision following Jenkins and rejecting Glaski. See Yvanova v. New Century Mortg. Corp., 226 Cal.App.4th 495 (2014), review granted & opinion de-published, 331 P.3d 1275 (Cal. Aug. 27, 2014). Subsequent to granting review of Yvanova, the California Supreme Court also granted hearings in Keshtgar v. U.S. Bank, N.A., 226 Cal.App.4th 1201 (2014), review granted & opinion de-published, 334 P.3d 686 (Cal. Oct. 1, 2014), and Mendoza v. JPMorgan Chase Bank, N.A., 228 Cal.App.4th 1020 (2014), review granted & opinion de-published, 337 P.3d 493 (Cal. Nov. 12, 2014), both of which rejected Glaski. Briefing in Keshtgar and Mendoza has been deferred pending consideration and disposition of this issue in Yvanova, which has yet to be decided.

-17-

Thus, we are tasked with deciding the case before us based on our prediction of how the California Supreme Court will rule. See Hemmings, 285 F.3d at 1203. The Turners rely on Glaski to challenge the assignments of their DOT and Defendants' right to foreclose. They do not challenge the legality of the securitization process in general, instead, they focus on the late transfer of the Assignment to CitiGroup in 2011, argue that this late transfer violated the PSA, and contend that this late transfer provides an adequate basis for their contention of impropriety in the foreclosure process.

In Glaski, the appellate court held that under New York trust law, which governed the securitized trust, the postclosing date transfer of the borrowers' note and deed of trust to the trust violated its pooling and servicing agreement and was void, rather than merely voidable. Therefore, based on the void assignment, the borrower had standing to challenge foreclosure. 218 Cal.App.4th at 1094-97. In so holding, the Glaski court relied primarily on an unpublished New York decision, Wells Fargo Bank, N.A. v. Erobobo, 972 N.Y.S.2d 147 (Sup. Ct. 2013). However, a New York appellate court recently reversed Erobobo in the published decision of Wells Fargo Bank, N.A. v. Erobobo, 127 A.D.3d 1176 (N.Y. App. Div. 2015). The appellate court held that the mortgage borrower did not have standing to challenge the validity of the note and mortgage assignments based on any purported noncompliance with certain provisions of the trust's pooling and servicing agreement. We believe Erobobo's reversal directly affects the validity of Glaski.

We predict the California Supreme Court will follow Jenkins,

-18-

so we will follow it as well and hold that the Turners lack standing to challenge assignments of their Note and DOT based on an alleged violation of the PSA. See Rivera v. Deutsche Bank Nat'l Trust Co. (In re Rivera), 2014 WL 6675693, at *8 (9th Cir. BAP Nov. 24, 2014)(reaching same conclusion on this issue).

In Jenkins, the plaintiff-borrower alleged that irregularities in the securitization process which violated the trust's pooling and servicing agreement resulted in extinguishment of any security interest in her home. 216 Cal.App.4th at 511. The court found that the borrower lacked standing to challenge purported violations of the investment trust's pooling and servicing agreement. Id. at 514-15. It reasoned that the relevant parties to the pooling process were the holders (transferors) of the promissory notes and third party acquirers (transferees) of the notes, not the borrower, who was an unrelated third party to the securitization. Id. at 515. Even if the transfers or assignments were invalid, the borrower was not injured because she remained obligated under the note. Id. The only injured party would be one who incorrectly believed it held a beneficial interest in the note. Id. Accordingly, the borrower's complaint was properly dismissed without leave to amend. Id. at 503, 517.[9]

Federal courts within the Ninth Circuit (and the Ninth Circuit in an unpublished decision) have generally rejected the

[9] The California Court of Appeal for the Second District has adopted the holding in Jenkins and declined to follow Glaski, stating that the "vast majority" of courts analyzing Glaski have found it unpersuasive. Kan v. Guild Mortg. Co., 230 Cal.App.4th 736, 742-744 (2014).

-19-

holding in Glaski, noting that it is a minority view. See Davies v. Deutsche Bank Nat'l Trust Co. (In re Davies), 565 F. App'x. 630, 633 (9th Cir. Mar. 24, 2014)(citing Jenkins and Flores v. EMC Mortg. Co., 997 F. Supp. 2d 1088 (E.D. Cal. 2014)(collecting cases) and concluding that the California Supreme Court would follow "the weight of authority" holding that borrowers, who are not parties to pooling and servicing agreements, cannot challenge them); Sanders v. Sutton Funding, LLC, 2014 WL 2918590, at *5 (S.D. Cal. June 26, 2014)(citing several federal cases to show that "every other federal district court in California has also disavowed Glaski"); Lanini v. JPMorgan Chase Bank, 2014 WL 1347365, at *5 (E.D. Cal. Apr. 4, 2014)(declining to follow Glaski, noting that district courts in the Ninth Circuit have sided with Jenkins); Snell v. Deutsche Bank Nat'l Trust Co., 2014 WL 325147, at *5 (E.D. Cal. Jan. 29, 2014)(rejecting the reasoning in Glaski and stating that "[u]ntil either the California Supreme Court, the Ninth Circuit, or other appellate courts follow Glaski or address the discrepancy between Glaski and Jenkins, this Court will continue to follow the Jenkins rule."); Apostol v. CitiMortgage, Inc., 2013 WL 6328256, *7 (N.D. Cal. Nov. 21, 2013)("[C]ourts in this District have expressly rejected Glaski and adhered to the majority view that individuals who are not parties to a PSA cannot base wrongful foreclosure claims on alleged deficiencies in the PSA/securitization process."); Dahnken v. Wells Fargo Bank, N.A., 2013 WL 5979356, at *2 (N.D. Cal. Nov. 8, 2013); Sandri v. Capital One, N.A. (In re Sandri), 501 B.R. 369, 374 (Bankr. N.D. Cal. 2013)(borrower lacked standing to challenge foreclosure based on alleged violations of the

pooling and servicing agreement and stating that Glaski "is an outlier" and "is inconsistent with the majority line of cases and is based on a questionable analysis of New York trust law."). But see Cheung v. Wells Fargo Bank, N.A., 2013 WL 6017497, at *4 (N.D. Cal. Sept. 25, 2013)(issued one month after Glaski and reaching same result as Glaski, but not citing it).

Other federal courts in California, prior to Glaski and Jenkins, have determined that borrowers lack standing to challenge assignments based on alleged violations of a pooling and servicing agreement. See Sami v. Wells Fargo Bank, 2012 WL 967051, at *6 (N.D. Cal. Mar. 21, 2012)("To the extent Plaintiff bases her claims on the theory that Wells Fargo allegedly failed to comply with the terms of the PSA, the court finds that she lacks standing to do so because she is neither a party to, nor a third party beneficiary of, that agreement."); Junger v. Bank of Am., 2012 WL 603262, at *3 (C.D. Cal. Feb. 24, 2012)(holding that plaintiff lacked standing to challenge securitization process because he was not a party to the pooling and servicing agreement); Bascos v. Fed. Home Loan Mortg. Corp., 2011 WL 3157063, at *6 (C.D. Cal. July 22, 2011)("To the extent Plaintiff challenges the securitization of his loan because Freddie Mac failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust.").

Courts outside of the Ninth Circuit applying other states' nonjudicial foreclosure laws have reached similar conclusions. Rajamin v. Deutsche Bank Nat'l Trust Co., 757 F.3d 79, 90 (2d. Cir. 2014)(rejecting Glaski as inconsistent with New York law and

-21-

other courts' interpretation of New York law, including <u>Erobobo</u>); <u>Correia v. Deutsche Bank Nat'l Trust Co. (In re Correia)</u>, 452 B.R. 319, 324-25 (1st Cir. BAP 2011)(debtors lacked standing to raise violations of a pooling and servicing agreement).

In addition to the Turners' lack of standing, their claim for wrongful foreclosure also fails because they did not articulate any prejudice as a result of Defendants' purported lack of authority to commence the foreclosure process. <u>Siliga v. Mortg. Elec. Registration Sys., Inc.</u>, 219 Cal.App.4th 75, 85 (2013); <u>Fontenot v. Wells Fargo Bank, N.A.</u>, 198 Cal.App.4th 256, 272 (2011)(to recover on a wrongful foreclosure claim borrower must demonstrate that alleged imperfection in the foreclosure process was prejudicial). No prejudice exists where the borrower is in default and cannot show that the allegedly improper assignment interfered with the borrower's ability to pay or that the original lender would not have foreclosed under the circumstances. <u>Dick v. Am. Home Mortg. Servicing, Inc.</u>, 2013 WL 5299180, at *4-5 (E.D. Cal. Sept. 18, 2013); <u>In re Sandri</u>, 501 B.R. at 376; <u>Siliga</u>, 219 Cal.App.4th at 85; <u>Fontenot</u>, 198 Cal.App.4th at 272. <u>See also</u> <u>Simmons v. Aurora Bank, FSB</u>, 2013 WL 5508136, at *2 (N.D. Cal. Sept. 30, 2013)(defects in transfers do not injure the borrower because even if there were defects in the assignment of the deed of trust, that assignment would not change borrower's obligation to pay); <u>accord</u> <u>Apostol</u>, 2013 WL 6328256, at *7.

The assignment of the Turners' Note and DOT did not change the Turners' obligations to pay. It is undisputed that the Turners were in default under the Note when the NOD was recorded. It is also undisputed that they made no payments on the Note in

-22-

accordance with Debtor's confirmed Plan. Although the Turners alleged it "was unclear who the true holder of the beneficial interest in Plaintiff's mortgage was given the void assignment of the [DOT]," that allegation fails to support any alleged prejudice. Further, the Turners never alleged that they did not know who to pay or that any payments made were not credited to their account. They have also not alleged that they cured the arrearage or paid the debt in full. Finally, the Turners have never alleged that any third party has come forward attempting to enforce the debt, making their claim yet more implausible. See Bernardi v. JPMorgan Chase Bank, N.A., 2012 WL 33894, at *2 (N.D. Cal. Jan. 6, 2012).

Initiation of the foreclosure process was proximately caused by the Turners' default, not the acts of Defendants. The Turners have not shown any economic injury or loss of property as a result of any alleged defects in the assignment and/or securitization process, especially since they have lived in the Residence rent free for the past three-plus years. Moreover, they failed to allege any plausible causal link between the harm they alleged and Defendants' alleged misconduct. To the extent they contend NBS lacked authority to record the NOD because NBS was "not appointed" as trustee until three months after the NOD was recorded in February 2012, we reject that argument. The SOT substituting NBS as trustee was executed on January 23, 2012; it was recorded on May 2, 2012. California law does not require a substitution of trustee to be recorded for it to be effective, only that it be executed. In re Cedano, 470 B.R. at 532. CAL. CIV. CODE § 2934a(b) contemplates that, as long as the borrower has notice, the

-23-

foreclosure process may proceed where the substitution of trustee is executed but not recorded until after the notice of default is recorded. Ram v. OneWest Bank, FSB, 234 Cal.App.4th 1, 13 (2015). Therefore, NBS had the right to issue the NOD.

The Turners alleged nothing unlawful about the foreclosure process beyond the alleged deficient assignment and securitization they contend precluded any Defendant from having an interest in the Residence. Accordingly, the bankruptcy court did not err in dismissing the Turners' claim for wrongful foreclosure.

The Turners' claim for breach of express contract also fails. Here, the Turners alleged that Defendants breached the PSA by assigning the DOT to Citigroup after the Trust Pool had closed. For the reasons stated above, the Turners lack standing to assert such a claim. The Turners also alleged that Defendants breached Sections 22 and 24 of the DOT, which describes the rights and responsibilities of the lender in the event of the borrower's default and the procedures for substitution of trustees. This claim is based on the Turners' erroneous conclusion that U.S. Bank had no authority to invoke the power of sale based on void assignments and the erroneous conclusion that NBS had no authority as trustee to issue the NOD because the SOT was not recorded until after the fact. Because the Turners did not adequately plead that U.S. Bank does not hold a beneficial interest in the DOT or that NBS could not issue the NOD, they have failed to sufficiently allege breach. Furthermore, the Turners cannot show any damages caused by Defendants' alleged breach of the DOT; the foreclosure process started because of their undisputed default. Accordingly, the bankruptcy court did not err in dismissing the Turners' claim

for breach of express contract.

Finally, the Turners did not state a viable claim for violation of CAL. CIV. CODE § 2923.5. They alleged that CitiGroup failed to comply with the statute because it was never the holder of the beneficial interest in the DOT due to the void Assignment by Wells Fargo in May 2011, a claim which we reject for the same reasons discussed above; the Turners lack standing to assert a claim for defective assignments. In their opposition to the Motion to Dismiss, however, the Turners claimed they were never contacted by anyone to discuss options to foreclosure before the NOD was recorded. While this allegation taken as true can establish a claim for violation of CAL. CIV. CODE § 2923.5, a plaintiff's memorandum in opposition to a Civil Rule 12(b)(6) motion cannot serve to supplement or amend the complaint. See Gomez v. Ill. State Bd. of Educ., 811 F.2d 1030, 1039 (7th Cir. 1987). Even if it could, it does not follow, as the Turners have alleged, that all subsequent foreclosure proceedings based on the NOD were invalid and void.

The remedy for failure to comply with CAL. CIV. CODE § 2923.5 is limited to a one-time postponement of an impending foreclosure. In re Cedano, 470 B.R. at 533 (citing multiple cases); In re Sandri, 501 B.R. at 378. Considering that no sale has occurred despite the NOS having been filed nearly three years ago, and because the NOD may need to be recorded again (if it has not been already), the Turners could not be afforded any effective remedy that they have not already received. The bankruptcy court did not err in dismissing the Turners' claim for violation of CAL. CIV. CODE § 2923.5.

-25-

**C. The bankruptcy court did not abuse its discretion in denying the Turners leave to amend the complaint.**

If a court dismisses a complaint for failing to state a claim, the court may grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). Generally, when a viable claim may be pled, the court should freely grant leave to amend. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011). However, a court has discretion to deny leave to amend if "amendment would be futile," such as if a plaintiff's claims "are factually and legally implausible." Zadrozny, 720 F.3d at 1173 (citation and internal quotation marks omitted).

The Turners contend in their statement of issues on appeal that the bankruptcy court abused its discretion in dismissing their complaint without leave to amend. However, they did not articulate any specific argument as to how the bankruptcy court abused its discretion in not granting leave to amend. Thus, we may consider this issue abandoned. In re Branam, 226 B.R. at 55.

Nonetheless, even if we were to consider it, we perceive no abuse of discretion by the bankruptcy court. We recognize that the Turners had no prior opportunity to amend their complaint and that dismissal without leave to amend can be harsh. However, because they lack standing to assert the claims they have argued on appeal, and could never plead facts establishing causation and/or damages as a result of Defendants' alleged wrongful acts in any event, any such amendment in this case would be futile; all of their claims fail as a matter of law. Zadrozny, 720 F.3d at 1173.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM.